**DISABILITY RIGHTS WASHINGTON**
Kimberly Mosolf, WSBA #49548
Heather McKimmie, WSBA #36730
David Carlson, WSBA #35767
315 Fifth Avenue South, Suite 850
Seattle, WA 98104
(206) 324-1521

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems, | No. |
| Plaintiff, | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |
| vs. | |
| YAKIMA COUNTY, and Ed Campbell in his official capacity as Director of the Yakima County Department of Corrections, | |
| Defendants. | |

## I.    Preliminary Statement

1.    Plaintiff Disability Rights Washington brings this case as an associational plaintiff on behalf of its constituents, people with mental illness or cognitive disabilities. The case is brought against Defendants Yakima County and Yakima County Department of Corrections Director Ed Campbell, in his official capacity, to provide people with mental illness or cognitive disabilities confined in

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 1

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

1  Yakima County Jail with improved treatment they need and are entitled to under the

2  Constitution and federal civil rights laws.

3      2.      Plaintiff conducted an extensive investigation of conditions at the

4  Yakima County Jail from the spring through the fall of 2016 which revealed facts

5  upon which this Complaint is based. Plaintiff sent Defendants a demand letter on

6  August 12, 2016. Parties agreed to enter into a structured negotiation process prior

7  to filing this complaint in order to allow Parties to focus their collective efforts on

8  collaborative resolution instead of adversarial litigation of the claims. Over the past

9  year and a half, Plaintiff has continued to monitor the Jail as it has engaged with

10 Defendants in negotiations to address Plaintiff's concerns. Plaintiff acknowledges

11 that Defendants have taken steps to address those concerns of Plaintiff's that were

12 within their immediate reach throughout this process and that some conditions in the

13 jail are transitioning towards resolution.

14     3.      Without furthering the reforms committed to in the Settlement

15 Agreement between Parties, Defendants' past and current actions constitute

16 deliberate indifference to the harms suffered by the people in their care due to

17 inadequate mental healthcare. Defendants' mental health screening and assessment

18 procedures have not considered people's mental health histories and have not made

19 consistent and completed referrals to qualified mental health staff. Defendants have

20 not provided adequate therapeutic treatment for people with mental illness, even for

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

those in acute mental health crisis who are most vulnerable to the difficult conditions of jail. Defendants have placed people in acute mental health crisis into more dangerous conditions. Defendants provided no individual or group therapeutic programming and have refused to provide necessary psychiatric medication.

4.     When Defendants become aware of an inmate's mental health needs, they routinely place them in solitary confinement under harsh conditions without appropriate assessment of the person's needs, behavior, or security and safety risk. Defendants do not screen people for risk of harm prior to placement in solitary confinement, monitor them for decompensation while in solitary confinement, or take action when people report worsening mental health symptoms due to conditions in solitary confinement. They have also used solitary confinement as punishment for inmate behaviors that are the product of mental illness.

5.     For people who can access mental healthcare at the Jail, Defendants have routinely not provided any privacy for confidential communications. Mental health staff meet with people briefly through their cell doors or in hallways, or with security staff standing close enough to hear conversation. This not only impacts privacy, but it undermines the effectiveness of the mental health services available.

6.     This case seeks injunctive and declaratory relief to require Defendants establish adequate environments and services that meet the therapeutic needs of people with mental illness, as required by the Eighth and Fourteenth Amendments

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 3

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

of the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act. Without injunctive and declaratory relief, many people with mental illness will continue to languish in Yakima County Jail, getting sicker each day in isolated cells without the treatment and medication they need.

## II. Jurisdiction and Venue

7. This action is brought pursuant to 42 U.S.C. § 1983 and § 12132.

8. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Declaratory relief is authorized by 28 U.S.C. §§ 2201 - 2202.

9. Venue in this court is proper pursuant to 28 U.S.C. § 1391.

## III. Parties

**Plaintiff**

10. Plaintiff Disability Rights Washington, a non-profit corporation duly organized under the laws of the State of Washington, is the statewide protection and advocacy system designated by the Governor of the State of Washington to protect and advocate for the legal and civil rights of those residents of this state who have disabilities, pursuant to the DD Act, 42 U.S.C. §§ 15041-15045, the PAIMI Act, 42 U.S.C. §§ 10801-10851, the PAIR Act, 29 U.S.C. § 794e, and the PATBI Act, 42 U.S.C. § 300d-53, RCW § 71A.10.080(2). As such, Disability Rights Washington

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 4

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

fulfills its federal mandate by providing an array of protection and advocacy services to people with disabilities across Washington, including the constituents in this case. Disability Rights Washington is governed by a board of directors that has a majority people with disabilities and a super majority of people with disabilities and their family members. This board is advised by two advisory councils, the Disability Advisory Council and the statutorily mandated Mental Health Advisory Council, both of which are also comprised of a majority of people with disabilities and super majority of people with disabilities and their family members.

11.    For decades, Disability Rights Washington has engaged in systemic advocacy and litigation regarding the rights of people with disabilities who have lost their liberty and are denied individualized and appropriate care and treatment.

12.    Disability Rights Washington's Amplifying Voices of Inmates with Disabilities (AVID) Program is specifically focused on advocating for people with disabilities in jails and prisons. AVID has been recognized across the state and nationally, and has been asked to present at events for the White House, U.S. Senate, National Center on Disability, and at multiple conferences for corrections advocates and administrators across the country.

13.    AVID has monitored conditions and policies of every county jail and state prison in the state. It has released numerous reports and videos of statewide and

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 5

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

national significance detailing its findings and advocating for remedies to problems in those settings.

14. Disability Rights Washington's AVID Program conducted an extensive investigation into the conditions faced by people with disabilities in Yakima County Jail and has continued to monitor the facility, including reviewing policies, visiting the facility, and speaking to inmates and staff.

15. As the federally mandated and designated protection and advocacy entity for Washington State, Disability Rights Washington has associational standing to represent the interests of people with disabilities, including specifically individuals with disabilities who are held in county jails. *See Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1109-16 (9th Cir. 2003) (outlining associational standing requirements for a protection and advocacy system); *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1020 (W.D. Wash. 2015), *modified*, No. C14-1178 MJP, 2016 WL 4533611 (W.D. Wash. 2016), *vacated and remanded on other grounds*, 822 F.3d 1037 (9th Cir. 2016) (recognizing DRW's associational standing); *K.M. v. Regence Blueshield*, C13-1214 RAJ, 2014 WL 801204 (W.D. Wash. 2014) (holding "DRW has constitutional standing to represent its constituents-individuals with physical, mental and developmental disabilities in Washington State."). Because Disability Rights Washington's constituency includes all Yakima County Jail residents who have mental health

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 6

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

conditions or cognitive disabilities, the interests of Disability Rights Washington and the affected individuals are in alignment.

**Defendants**

### A.   Yakima County

16.   Defendant Yakima County is a political subdivision of the State of Washington. Defendant Yakima County operates the Yakima County Jail through its Department of Corrections. The Jail is located at 111 N. Front Street, Yakima, WA 98901.

17.   In its Jail, Yakima County houses people charged with crimes or those convicted and serving sentences up to one year. The Jail population includes numerous people with disabilities, many of whom require specialized services or housing to be safe.

18.   As the Jail operator, Defendant Yakima County is responsible for the health, safety, and treatment of inmates detained in the facility and for the Jail's staffing and operations. Yakima County is responsible and liable for the actions of all Jail employees, contractors, and sub-contractors.

19.   As detailed below, Defendant Yakima County has not properly trained or supervised Yakima County employees nor properly promulgated policies and standards to ensure that the Jail is operated in a constitutional manner.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

## B.    Ed Campbell, in His Official Capacity

20.    Ed Campbell is sued only in his official capacity as the director of the Yakima County Department of Corrections and not as an individual. Defendant Campbell's administrative office is located at 111 N. Front Street in city of Yakima, Washington.

21.    Defendant Campbell, in his official capacity, has at all times relevant herein acted under color of state law and has exercised general responsibility, supervision, and oversight of the policies, practices, and operations of the Yakima County Department of Corrections.

22.    Defendant Campbell's responsibilities include overseeing all staff and ensuring contractors comply with department and contract expectations, including those staff and contractors responsible for properly treating and serving individuals in the department's physical custody.

23.    The material facts set out below are known to Defendant Campbell. All actions described were taken or continue to be taken by Jail staff at the explicit direction of the Jail administration or with the knowledge and consent thereof.

24.    In addition, as detailed below, Defendant Campbell has not properly trained or supervised Yakima County Department of Corrections employees and has not properly promulgated policies and standards to ensure that the Jail is operated in a constitutional manner.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 8

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

25.     The Yakima County Department of Corrections which Defendants operate employs a number of correctional officers and other staff to operate the Jail.

26.     Defendant Campbell is physically present at the Jail on a regular basis.

## IV.     Factual Allegations

### A.     Background

27.     Plaintiff began investigating the conditions of confinement faced by people with mental illness (hereinafter "Plaintiff's constituents") in Defendants' care in the spring of 2016.

28.     Plaintiff obtained and reviewed Defendants' written policies relating to Plaintiff's constituents in Defendants' care.

29.     Between March 2016 and August 2018, Plaintiff made six monitoring visits to Yakima County Jail to examine the facility and speak to Plaintiff's constituents about their experiences and conditions in Defendants' care.

30.     Since March of 2016, Plaintiff has communicated with numerous additional constituents in Defendants' care via telephone and mail about their experiences and conditions.

31.     Plaintiff has met several times with Defendants' staff to discuss the conditions of confinement for Plaintiff's constituents in Defendants' care.

32.     In the course of its investigation, Plaintiff has also reviewed extensive Jail records for eighteen inmates.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

33.     Plaintiff twice provided Defendants with extensive written explanation of its concerns about conditions and mental healthcare in the Jail, including constituent examples.

34.     Over the past twenty months, Plaintiff and Defendants have engaged in negotiations to address Plaintiff's concerns.

35.     It is with this familiarity and knowledge of Defendants' practices and policies that Plaintiff makes the following factual allegations on behalf of its constituents.

    **B.     Defendants do not adequately screen and assess inmates for chronic or emergency mental healthcare needs.**

36.     Without effectively identifying an inmate's need, and then connecting that inmate to appropriate follow up appointments and services, Defendants cannot provide adequate mental healthcare.

    **1.     Defendants have not ensured timely and appropriate referral to qualified mental health staff when inmates indicate chronic or emergency mental healthcare needs.**

37.     Records reflect that Defendants have used a receiving screening form that allows staff to make routine or urgent referrals for follow up with mental health staff.

38.     Plaintiff has observed through reviewing constituents records that Defendants make confusing or conflicting mental health referrals based on the receiving screening.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

39.     Plaintiff has also observed through reviewing constituents' records that when Defendants make mental health referrals, mental health staff often do not follow up on them.

40.     When one of Plaintiff's constituents ("Constituent A") came back into Defendants' care in July 2016, his receiving screening resulted in a routine referral to mental health, but mental health staff never followed up with him in person or in writing.

41.     Constituent A then saw a mental health staff member three weeks later only in response to his written requests for psychiatric medication; by that time he had been placed on suicide watch several times.

42.     Another of Plaintiff's constituents ("Constituent B") who has a significant mental health history that is well known to Defendants was placed on suicide watch after banging his head against the wall during his booking process on May 6, 2016.

43.     On May 7th, Constituent B provided information recorded on a receiving screening form that should have triggered notification of supervisory staff and immediate mental health evaluation, as per directions on the screening form.

44.     At the bottom of this screening form, however, staff did not choose the appropriate option "acute problems, immediate referral," but instead chose a "routine non-emergent" mental health referral for him, without explanation.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 11

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

45.    On May 8th, staff performed a physical health screening for Constituent B and noted their significant concerns about his mental health and suicide risk, indicating in their notes that mental health staff would follow up immediately. In fact, mental health staff did not see him until May 12th.

46.    The screening process for another of Plaintiff's constituent's ("Constituent C") resulted in two separate mental health referrals on the same date— one routine and one urgent—without explanation.

47.    Notably, mental health staff never followed up on either referral for Constituent C.

**2.    Defendants do not routinely or timely consult an inmate's health records and history when assessing for chronic or emergency mental health needs.**

48.    Plaintiff has reviewed numerous mental health assessments for its constituents that do not reflect the constituent's prior mental health treatment while in Defendant's care or otherwise.

49.    When Constituent B was booked into the Jail on August 6, 2016, his receiving screening form notes only that he reported having been at Eastern State Hospital, a public psychiatric hospital, in 2016 and having taken psychiatric medication in the past.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

50.     In fact, Constituent B had been in Defendants' care until his July 15, 2016 release, a mere three weeks prior to this August 6th booking and receiving screening.

51.     During the prior incarceration—and the many before that—Defendants accumulated lengthy mental health records for Constituent B, including records from the month he spent at Eastern State Hospital and records of the psychiatric medication that Defendants prescribed to him in July.

52.     Nowhere in Constituent B's August 6th receiving screening is there any indication that Defendants reviewed their own extensive mental health records for him, including the psychiatric medication prescription that was only three weeks old.

53.     Notably, as a result of the August 6th receiving screening, Defendants did not refer Constituent B for any follow up mental health appointments or mention his need for psychiatric medication.

### 3. Defendants do not provide appropriate mental health evaluations to inmates who indicate chronic or emergency mental healthcare needs.

54.     Defendants perform brief mental health assessments for some of Plaintiff's constituents, but these do not routinely involve examination by a psychiatrist or psychiatric ARNP, physical examination, documentation of psychiatric and biographical history, or formalized psychological testing.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 13

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

55.     Records reflect no evidence of in-depth mental health evaluations beyond brief assessments.

56.     Constituent B has been repeatedly in and out of Defendants' care and has a significant history of serious mental illness well known to Defendants, including diagnoses of psychotic disorder and bipolar disorder.

57.     Constituent B has been found not competent to participate in his criminal cases on several occasions and has received restoration services at Eastern State Hospital.

58.     Records reflect that Defendants did not provide Constituent B with an appropriate mental health evaluation to determine his treatment needs.

**C.      Defendants do not provide adequate mental healthcare for inmates who indicate chronic or emergency mental healthcare needs.**

**1.   Defendants have not had active policies in place governing the provision of mental healthcare in the Jail.**

59.     Defendants provided Plaintiff with three policies governing mental healthcare: mental health appraisal, suicide prevention, and mental health commitment to local hospitals.  These policies were prepared by security staff, not by mental health staff.

60.     Defendants' mental health services are provided through contracted staff of Comprehensive Healthcare, a community mental health treatment provider.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

61.     Records do not reflect that Defendants' contracted mental health staff acknowledge or routinely follow the three policies Defendants provided.

62.     Plaintiff specifically requested that Defendants' contracted mental health staff provide the written policies they use to govern their provision of mental healthcare in the Jail.

63.     In response, Defendants' contracted mental health staff admitted to Plaintiff that they had no such policies in place for providing mental healthcare in the Jail.

**2. Defendants do not provide therapeutic treatment to inmates who indicate chronic or emergency mental healthcare needs.**

64.     In the course of Plaintiff's investigation, Defendants admitted that they did not provide individual or group therapeutic programming for inmates with mental illness, no matter the need.

65.     Records reflect that Defendants generally utilize only brief "wellness checks," suicide screening, and psychiatric medication management as forms of mental health treatment.

66.     Records do not reflect the use of individualized treatment plans by Defendants, even for inmates who have serious mental illness with complicated treatment needs that may require formal coordination between medical, mental health, and custody staff.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 15

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

67.     Records reflect that Defendants have not had policies that lay out criteria for mental health monitoring and follow up.

68.     Records reflect that Defendants' mental health monitoring and follow up with Plaintiff's constituents is inconsistent and does not appear to be based on clinical indications or priorities.

69.     Records reflect that some of Plaintiff's constituents in acute mental health crisis were scheduled for mental health follow up only "as needed," while other constituents with less acute need were scheduled for follow up in two to four weeks without explanation.

70.     Defendants have not provided adequate treatment for inmates in acute mental health crisis, instead they have confined these inmates to padded cells, booking cells, or visitation rooms, often in restraints, without significant therapeutic interventions.

71.     Defendants generally have provided these inmates with fifteen or thirty-minute safety checks and a daily self-harm assessment at the door of their cell, but no other therapeutic interventions.

72.     In the course of its investigation, Plaintiff has observed, spoken to, and reviewed records for many inmates held in padded cells, booking cells, or visitation cells as a result of acute mental health crisis who describe only getting daily self-harm assessments.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 16

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

73.    Defendants' "log sheets" kept to record the fifteen or thirty-minute safety checks often do not list the reason the inmates is placed in isolation for observation, or list contradicting reasons for placement—for example, "behavior" during one shift, and then "medical observation" during the next.

### 3. Defendants place inmates in acute mental health crisis into unsafe conditions.

74.    Defendants often place inmates in acute mental health crisis, including those at risk of self-harm or suicide, into padded cells or booking holding cells.

75.    The only window to this cell is routinely covered so that the inmate cannot be easily viewed or monitored.

76.    Defendants have also placed inmates in acute mental health crisis, including those at risk of self-harm or suicide, into visitation rooms when there is no space available in the padded cells or booking holding cells.

77.    Upon information and belief, visitation rooms are not safe for inmates in acute mental health crisis who may be at risk of self-harm or suicide, because they have ligature points and other features that facilitate self-harm and suicide.

78.    Records reflect that Defendants also routinely place inmates in acute mental health crisis who may be at risk of self-harm or suicide into restraints they call "state chains."

79.    Defendants have placed inmates restrained in "state chains" into visitation rooms, often leaving them alone and insufficiently monitored.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

80.     On July 23, 2016, Constituent A told Defendants that he was suicidal and, as a result, Defendants placed him into "state chains" and put him into a visitation room.

81.     Defendants left him in the visitation room in "state chains" and placed him on thirty-minute checks.

82.     During a later check on Constituent A in this visitation room, Defendants found him sitting on the floor attempting to strangle himself with a cord.

### 4. Defendants do not provide adequate treatment with psychiatric medications.

83.     Records reflect that Defendants have routinely not confirmed existing prescriptions for psychiatric medication for inmates, causing serious delay or denial of necessary medical treatment.

84.     Constituent A, who has been in Defendants' care several different times in 2016, reported at a July 2016 booking that he has bipolar disorder for which he was prescribed psychiatric medication by an outside community provider.

85.     Defendants made no effort to contact the outside provider and confirm this prescription until Constituent A asked why he was not getting his medication three weeks later.

86.     The day after mental health staff met with him, Constituent A attempted suicide by strangulation.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

87.     Three days later, Defendants finally confirmed the prescription for the medication and began providing it to him.

88.     Defendants have refused to provide psychiatric medications to inmates unless the inmate entered Jail with current outpatient treatment and existing prescriptions, despite the inmate's actual current need for psychiatric medication.

89.     Records reflect the following responses written by Defendants to inmates who requested new evaluation for psychiatric medications:

    a.    "...Per YCDOC policy you did not come into custody with medications and will need to follow up with MH services in the community upon your release";

    b.    "...as you were previously told, you will not be started on medications at this time b/c you were not current on them prior to coming into custody";

    c.    "No, you were not current on them when you came to custody and will not be started on them at this time."

90.     Defendants have disrupted psychiatric medication without communicating any reason to the inmate or recording a reason in the clinical record. Upon information and belief, abrupt discontinuation of psychiatric medication can cause serious health risk.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

91.     Records reflect that one of Plaintiff's constituents reported to Defendants that his psychiatric medication had been abruptly discontinued and it was not restarted for a week.

92.     Upon investigation, Defendants acknowledged this disruption, but could find no documented reason for it.

93.     Records reflect that Defendants have not provided adequate psychiatric medication to inmates at release from the Jail.

**D.      Defendants place inmates with mental illness and cognitive disabilities into solitary confinement under harmful conditions.**

94.     The United States Department of Justice defines solitary confinement as the "state of being confined to one's cell for approximately 22 hours per day or more, alone or with other prisoners, that limits contact with others."[1]

**1.    Defendants' housing policies and practices result in the placement of inmates with mental illness and cognitive disabilities into solitary confinement without individualized assessment.**

95.     Defendants often place inmates with mental illness into solitary confinement simply because they are known to have mental illness or display symptoms of mental illness, without individualized assessment of the inmate's behavior, needs, or security and safety risk.

---

[1] U.S. Department of Justice, Investigation of State Correctional Institution at Cresson, May 13, 2013, Attachment #7, P. 5, https://www.justice.gov/sites/default/files/crt/legacy/2013/06/03/cresson_findings_5-31-13.pdf.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY
RELIEF - 20

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

96.     In response to Plaintiff's inquiry while monitoring the Jail facility, Defendants reported that inmates with mental illness are generally housed is solitary confinement.

97.     Records reflect that when Constituent C reported worsening symptoms of her schizophrenia, Defendants moved her to solitary confinement and noted that this was "because of the voices in her head."

98.     At a 2016 booking of Plaintiff Constituent D, Defendants noted that the constituent was well-known to have serious mental illness and had been housed in solitary confinement for mental health reasons during the past few incarcerations.

99.     Defendants returned him to solitary confinement on this basis alone without further assessment.

**2.     Defendants do not provide adequate notice of housing placement to inmates or the opportunity to meaningfully challenge such placement.**

100.     Records reflect that Defendants have not provided clear information to inmates about their housing placement.

101.     Records reflect that Defendants have provided housing notices to inmates that state simply that the inmate is being placed in "special housing for your safety or the safety of others."

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

102.   The housing notices provided to inmates do not make clear what type of housing an inmate is actually being assigned to or the reason for that assignment in any meaningful way.

103.   In the course of its investigation, Plaintiff found that Defendants routinely provide these inadequate housing notices to its constituents who are being placed in solitary confinement.

104.   Records reflect that Defendants also provide no meaningful process for inmates with mental illness to challenge their placement into solitary confinement.

105.   When Plaintiff has spoken in person and via telephone to its constituents held in solitary confinement, many did not know why they were in solitary confinement or how they could be transferred out of solitary confinement.

### 3. Defendants routinely impose disciplinary sanctions on inmates in response to behaviors related to the inmate's mental illness or cognitive disabilities.

106.   Defendants have a list of many infractions that result in varying degrees of punishment, including placement in solitary confinement for up to sixty days.

107.   Defendants categorize "self-mutilation" as a serious infraction, which can result in sanctions of up to sixty days in solitary confinement, loss of commissary, loss of "good time," loss of visitation privileges, and removal from a program.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

108.   "Self-mutilation" includes inmate acts of self-harm resulting from their mental illness.

109.   Defendants also categorize other behaviors that may be the result of the symptoms of mental illness as infractions, including "refusing to exit a cell or housing unit," "damaging, mutilating, altering or defacing" Defendants' property, "obscene or abusive language or gestures," "disrespecting YCDOC staff," "blocking or covering vents/lights/thermostat/windows," "hanging unauthorized pictures/drawing," "failure to cooperate with staff," "improper dress," and "excessive noise."

110.   All of these infractions may result in placement into solitary confinement for a period of between three and sixty days.

111.   Records reflect that Defendants have not reviewed infractions and sanctions for the role of mental illness and competency.

112.   Constituent B has been routinely issued major infractions for behaviors related to his mental illness, and has often been sanctioned with periods of thirty or sixty days in solitary confinement as a result.

113.   On May 5, 2016, while being held in a padded cell and described by officers as "talking nonsense," Constituent B punched and cracked the window in his cell door.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

114. Defendants issued him a major infraction for breaking Defendants' property and imposed a sanction of thirty days in solitary confinement.

115. Despite Constituent B's well-known history of mental illness and the specific circumstances of this incident, Defendants did not consult with mental health staff or consider whether Constituent B's mental illness may have played a role in the incident to the extent it reduced or eliminated his culpability.

### 4. Defendants do not respond to the harmful effects of solitary confinement on inmates with mental illness or cognitive disabilities.

116. Experts and courts have widely accepted that solitary confinement risks serious harm, especial to people with mental illness or cognitive disabilities.

117. Defendants have not assessed whether solitary confinement risks serious harm to inmates with mental illness or cognitive disabilities before placing them in solitary confinement.

118. Defendants' policies do not require mental health staff to perform any assessment of potential harm to an inmate from placement in solitary confinement prior to that inmate's placement.

119. Constituents A and B, both known to Defendants to have serious mental illness, were placed in solitary confinement on several occasions without mental health consultation about the potential harm of such confinement.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

120. Defendants do not adequately monitor inmates with mental illness held in solitary confinement for worsening mental health symptoms.

121. Defendants do not perform any routine mental health rounds in the solitary confinement units to promote access to care or monitor inmates for decompensation.

122. Records and Defendants' admissions reflect that Defendants do not perform any regular mental health monitoring of solitary confinement units.

123. Even when inmates with mental illness held in solitary confinement proactively report the negative effects of solitary confinement on their mental health, Defendants have not taken any meaningful action.

124. Constituent C, who has a diagnosis of schizophrenia and was placed in solitary confinement by Defendants because of her symptoms, submitted a written request to Defendants reporting, "I have a mental illness. Leaving me in the hole would trigger my voices louder.... I wouldn't like to be in the Hole/Seg any longer, can you get me out please?"

125. Defendant's written response to her was simply, "I do not have any place to put you."

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

### E.   Defendants do not provide inmates with confidential communications about their healthcare.

126.   Records reflect that Defendants routinely did not provide confidential health communication for inmates, which violates their rights and harms their clinical outcomes.

127.   Defendants' contracted mental health staff routinely meet with inmates in the Jail hallways or through the pass-through slot in their cell doors.

128.   During these meetings, a security officer is often present which affords no privacy for the inmate to communicate with mental health staff.

129.   Conducting visits in the hallways or through the door means that both security staff and other inmates are privy to confidential health information.

130.   Records reflect that Defendants do not record when or if there are security concerns that would support the need to meet in public settings or with an officer present.

131.   In the records for Constituent C, a mental health staff member notes that she met with Constituent C through the hatch in her cell door because she is held in segregation, without further explanation.

132.   Upon information and belief, Defendants' practices of conducting mental health meetings in public spaces prevents inmates from fully discussing sensitive information with clinicians, thereby preventing access to necessary mental healthcare.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

133.    Records reflect that Plaintiff's Constituent E who was housed in an open dormitory asked Defendants if he could be taken out of the dormitory when he meets with mental health staff because he did not want everyone in the tank or the officers present to hear what he wanted to say.

134.    Defendants responded that "sometimes due to officers being busy and also for security reasons, we cannot pull you out to talk and the officers have to stand by our side for security as well."

135.    Defendants provided no specific security concern regarding this constituent, who was housed with many other inmates in an open dormitory setting.

136.    When this constituent then asked about health confidentiality requirements and requested to meet in a visitation room, or at least to be pulled out into the hallway, Defendants did not respond further on this issue.

## V.    Claims for Relief

### A.    First Cause of Action: Fourteenth Amendment – Cruel and Unusual Conditions

137.    The allegations of the paragraphs above are incorporated herein.

138.    By the policies and practices described herein, Defendants deprive Plaintiff's constituents who are pre-trial detainees of the minimal civilized measure of life's necessities, place them at unreasonable risk of harm and injury, and violate their right to be free from cruel and unusual conditions under the Fourteenth Amendment to the United States Constitution. U.S. Const. Amend XIV, § 1.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

139.   The policies and practices complained of herein have been and continue to be implemented by Defendants and its agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity. Defendants have been and are aware of all the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

140.   Defendants have been deliberately indifferent to Plaintiff's constituents' health and safety by:

    a.  failing to appropriately screen and assess inmates for chronic and emergent mental health needs;

    b.  failing to provide necessary and adequate mental healthcare for inmates who indicate chronic or emergent mental healthcare needs;

    c.  placing inmates with mental illness into solitary confinement under inhumane conditions; and

    d.  violating inmates' right to confidential communication with mental healthcare providers.

### B.  Second Cause of Action: Eighth Amendment – Cruel and Unusual Conditions

141.   The allegations of the paragraphs above are incorporated herein.

142.   By the policies and practices described herein, Defendants deprive Plaintiff's constituents of the minimal civilized measure of life's necessities, place them at unreasonable risk of harm and injury, and violate their right to be free from

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1    cruel and unusual conditions under the Eighth Amendment to the United States

2    Constitution. U.S. Const. Amend VIII.

3           143.   The policies and practices complained of herein have been and continue

4    to be implemented by Defendants and its agents, officials, employees, and all

5    persons acting in concert under color of state law, in their official capacity.

6    Defendants have been and are aware of all the deprivations complained of herein,

7    and have condoned or been deliberately indifferent to such conduct.

8           144.   Defendants have been deliberately indifferent to Plaintiff's

9    constituents' health and safety by:

10          a.   failing to appropriately screen and assess inmates for chronic and

11               emergent mental health needs;

12          b.   failing to provide necessary and adequate mental healthcare for inmates

13               who indicate chronic or emergent mental healthcare needs;

14          c.   placing inmates with mental illness into solitary confinement under

15               inhumane conditions; and

16          d.   violating inmates' right to confidential communication with mental

17               healthcare providers.

18          **C.    Third Cause of Action: Fourteenth Amendment –
                    Procedural Due Process**

19

20          145.   The allegations of the paragraphs above are incorporated herein.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

146. By the policies and practices described herein, Defendants deprive Plaintiff's constituents of a significant liberty without any procedural safeguards in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. Amend XIV, § 1.

147. The Defendants regularly violate the Fourteenth Amendment by:

 a. failing to provide adequate notice of housing placement to Plaintiff's constituents;

 b. failing to provide Plaintiff's constituents with the opportunity to meaningfully challenge placement in solitary confinement;

 c. failing to provide meaningful and timely periodic review of Plaintiff's constituents' continued long-term and indefinite detention in solitary confinement;

 d. failing to provide meaningful notice of what Plaintiff's constituents must do to be transferred out of solitary confinement; and

 e. routinely placing Plaintiff's constituents into solitary confinement as discipline for behaviors related to mental illness without providing opportunity to assess the role of mental illness in the disciplinary incident.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

### D. Fourth Cause of Action: Americans with Disabilities Act and Section 504 of the Rehabilitation Act

148. The allegations of the paragraphs above are incorporated herein.

149. Plaintiff's constituents are all "qualified individuals with a disability" within the meaning of 42 U.S.C. § 12131(2) and are "otherwise qualified individuals with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

150. Defendant Yakima County is a public entity as defined by 42 U.S.C. § 12131(1)(a).

151. Defendant Yakima County receives federal financial assistance, and Defendant is thus subject to the provisions of the Rehabilitation Act.

152. Defendants discriminate against Plaintiff's constituents on the basis of disability by:

a. failing to ensure that people with mental illness have access to, are permitted to participate in, and are not denied the benefits of, programs, services and activities. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.152(b)(1); 29 U.S.C. § 794;

b. failing to properly assess inmates on an individual basis to determine whether solitary confinement is appropriate housing. *See* 28 C.F.R. § 35.130(h); 29 U.S.C. § 794;

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

c. failing to "ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals." 28 C.F.R. § 35.152(b)(2); *see* 29 U.S.C. § 794; and

d. failing to make "reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability...." 28 C.F.R. § 35.130(b)(7); *see* 29 U.S.C. § 794.

153. Reasonable modification of Defendants' policies, practices and procedures would not fundamentally alter the nature of their services, programs or activities.

## VI. Prayer for Relief

154. Wherefore, Plaintiff requests that this Court:

155. Issue a declaratory judgment that the conduct, conditions, and treatment described in the complaint violate Plaintiff's constituents' constitutional and statutory rights in the manner identified in this complaint.

156. Issue a permanent injunction restraining Defendants from violating the Eighth and Fourteenth Amendments and the Americans with Disabilities Act and Rehabilitation Act in the housing and provision of care in the Yakima County Jail.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

1     157.   Issue an award for Plaintiff's costs, litigation expenses, and

2  reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

3     158.   Such other and further relief as this Court may deem just and

4  equitable.

5     Dated this 18th day of December 2018.

6

7                                   Respectfully Submitted,

8                                   **DISABILITY RIGHTS WASHINGTON**

9                                   s/Kimberly Mosolf
                                    Kimberly Mosolf, WSBA #49548
10                                  Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20